**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDWARD N. DANIELS,
             *Petitioner,*

   v.

MARK GARMAN, et al.,
             *Respondents.*

CIVIL ACTION
NO. 18-00687

**PAPPERT, J.**                            **May 5, 2020**

**MEMORANDUM**

      Edward N. Daniels filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Respondents filed a response (ECF No. 13) and Daniels filed a reply. (ECF No. 22.) Magistrate Judge Marilyn Heffley issued a Report and Recommendation recommending denial of the petition. (ECF No. 23.) Daniels asserted objections (ECF No. 30) to which no response was filed. After filing his objections, Daniels also filed a motion seeking to expand the record. (ECF No. 32.) The Court overrules Daniels's objections, adopts the R&R, denies Daniels's petition and denies the motion to expand the record.

I

      Following a jury trial in the Philadelphia County Court of Common Pleas, Daniels was convicted of two counts each of second-degree murder, robbery and criminal conspiracy and one count of carrying a firearm on a public street or public property. *See Commonwealth v. Daniels*, Nos. CP-51-CR-0012194-2009, CP-51-CR-0012199-2009 (Pa. Ct. Com. Pl. Phila. Cnty. Apr. 3, 2012)[1] (Resp't Br., ECF No. 113, Ex.

---

[1]    The two sets of charges against Daniels were consolidated through the proceedings from trial through the denial of his PCRA petitions. Citations to the Court of Common Pleas Docket in this

A.) (hereinafter "Trial Ct. Op.")  The trial court imposed two consecutive mandatory sentences of life imprisonment on the murder convictions as well as concurrent sentences of 10 to 20 years' imprisonment for the firearms offense.  Transcript of Record at 1-2, *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009, (Pa. Ct. Com. Pl. Phila. Cnty. Dec. 1, 2011).

## A

Daniels's conviction arises from the following circumstances.  Keith Epps planned to rob Rian Thal, a party promoter who was involved in selling powder cocaine, and Timothy Gilmore, a drug courier, with the help of Daniels, Donnell Murchison and Langdon Scott.  On June 27, 2009, armed with semi-automatic weapons, Daniels, Murchison and Scott entered the Philadelphia apartment building where Thal lived while Epps waited in a van outside.  Epps's plan went awry, as captured in part by surveillance cameras installed at the apartment complex.  (*See* Trial Ct. Op. at 2-4.)

At trial, Scott explained he thought the plan was to purchase $4,500 of powder cocaine, but while they were in the elevator, Murchison announced that while Scott was buying drugs, Murchison and Daniels were going to rob Thal and Gilmore.  At that point, Scott declined to participate in the venture and the three men left the apartment building.  Scott and Daniels entered the waiting van to talk to Epps while Murchison waited outside.  Scott left and co-defendant Antonio Wright arrived at the building to take his place.  Daniels and Murchison reentered the apartment building with Wright around 5:00 p.m. and went to the seventh floor to wait for Thal and Gilmore.  Wright

Opinion are to the Docket for case number CP-51-CR-012194-2009 and not to the docket for case number CP-51-CR-0012199-2009.

and Daniels waited at one end of the hallway while Murchison waited on the other end. Epps called Murchison as Thal and Gilmore entered the building and, when they got off the elevator, Daniels, Murchison and Wright pulled out guns and announced a robbery. Gilmore resisted and Wright shot him.  Murchison then shot Thal in the back of the head, killing her.  Murchison saw that Gilmore was still alive and shot him twice in the head, killing him.  Daniels, Murchison and Wright fled to Epps's van and they all left the scene without money or drugs.  (Trial Ct. Op. at 2-4.)

During their investigation, Philadelphia Police obtained Epps's cell phone records, which showed numerous phone calls to individuals involved, including Wright, Scott and Murchison.  Detective Ron Dove of the Homicide Unit, however, was unable to verify that any calls were placed between Epps and Daniels.  Ballistic tests revealed that the bullets lodged in Gilmore and Thal's heads belonged to Murchison's weapon. Detectives arrested Wright. Wright confessed to shooting Gilmore and being involved in the robbery conspiracy, but he did not mention anyone else involved in the murders. (*Id.* at 5.)

Scott, who also had been arrested, testified at a preliminary hearing about his involvement in the crimes and was later stabbed numerous times in prison after being moved to a cell block where Daniels was being held.  When Scott was shown surveillance tapes during the trial, he identified Murchison and Daniels as the men with whom he had entered the building on the day of the murders.  Murchison testified at trial, but the court struck his testimony after he refused to undergo cross-examination.  (*Id.* at 5-6.)

Daniels's federal probation officer Akaga Campbell also testified and identified

Daniels as one of the men shown on surveillance video from the apartments and in still photographs captured from the video.  Campbell stated her opinion was based on Daniels's recognizable facial features and his choice of clothing.  Under cross-examination, she testified that she saw Daniels four to six times a month from February 2009 until his arrest on July 10, 2009.  (*Id.* at 6.)

B

Daniels appealed his conviction, raising:  (1) the trial court's decision to not grant a mistrial when Murchison, appearing as a Commonwealth witness, testified to Daniels's participation in the double murder on direct examination, but refused to answer any questions on cross examination; and (2) the court's decision to allow his probation officer to identify him as a person depicted in the surveillance video of the murder and accompanying still photographs.  Statement of Matters Complained of on Appeal Filed Pursuant to Pa. R. App. P. 1925(b) at ¶¶ 1-2, *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009 (Pa. Ct. Com. Pl. Phila. Cnty. Feb 21, 2012) (hereinafter "Matters Complained of on Direct Appeal.")  The Superior Court vacated one of Daniels's conspiracy convictions and affirmed all other aspects of the judgment of sentence.  *Commonwealth v. Daniels*, No. 188 EDA 2021, 2013 WL 11253764 (Pa. Super. Ct. Sept. 27, 2013) (*see also* Resp't Br., Ex. B.) (hereinafter "Super. Ct. Op.").  His request for allowance of appeal to the Pennsylvania Supreme Court was denied. *Commonwealth v. Daniels*, 537 EAL 2013 (Pa. 2014).

Daniels filed a timely *pro se* petition under Pennsylvania's Post Conviction Relief Act.  *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009 (Pa. Ct. Com. Pl. Phila. Cnty. Apr. 14, 2014.)  After counsel was appointed to represent him, Daniels filed an

4

amended PCRA petition. *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009, Dkt. at 14 (Pa. Ct. Com. Pl. Phila. Cnty. May 25, 2015.)  In his amended petition, Daniels claimed his trial counsel was ineffective for failing to object to:  (1) 17 comments in the prosecutor's opening statement; (2) 17 instances of alleged prosecutorial misconduct during the trial; and (3) 32 alleged instances of judicial error.  Am. Pet'r PCRA Br., *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009 (May 25, 2015).  Neither Daniels's *pro se* PCRA petition nor his counseled amended petition alleged ineffectiveness of his direct appeal counsel.  The PCRA court filed a notice of its intention to dismiss Daniels's petition pursuant to Pennsylvania Rule of Criminal Procedure 907 and, after he failed to respond to the notice, dismissed it without a hearing.  Opinion at 2 n.4, 7, *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009 (Pa. Ct. Com. Pl. Phila. Cnty. Mar. 8, 2016) (Resp't Br, Ex. C.) (hereinafter "First PCRA Trial Ct. Op.").  Daniels appealed to the Superior Court, which affirmed the dismissal, finding that his PCRA claims were without merit.  *Commonwealth v. Daniels*, No. 539 EDA 2016, 2016 WL 6124110, at *3-4 (Pa. Super. Ct. Oct. 20, 2016) (*see also* Resp't Br., Ex. D.)  The Pennsylvania Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Daniels*, 169 A.3d 3 (Pa. 2017).

Daniels filed a second PCRA petition which the court dismissed as untimely. *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009, Dkt. at 16 (Pa. Ct. Com. Pl. Phila. Cnty. June 2, 2017 to July 11, 2017); *see also Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009 (Pa. Ct. Com. Pl. Phila. Cnty. July 11, 2017) (Resp't Br., Ex. E) (hereinafter "Second PCRA Trial Ct. Op."), at 3.  Daniels appealed that Order, but the Superior Court affirmed the lower court's opinion and denied Daniels' appeal.

*Commonwealth v. Daniels*, No. 2525 EDA 2017, 2018 WL 3469857, at *8 (Pa. Super. Ct. July 9, 2018) (hereinafter "Second PCRA Super. Ct. Op.").

Daniels then filed a third PCRA petition which the court dismissed again as untimely. *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009, Dkt. at 17-18 (Pa. Ct. Com. Pl. Phila. Cnty. Aug. 28, 2018, Sept. 18, 2018, and Oct. 16, 2018.). Daniels appealed that decision to the Superior Court and the appeal remains pending. *Id.* (Dec. 16, 2018); *see also Commonwealth v. Daniels*, 35 EDA 2019 (Pa. Super. Ct.).

Daniels filed his habeas petition in this Court on February 16, 2018 (ECF No. 1), after the PCRA court determined that his second PCRA petition was untimely, before the Superior Court acted on his appeal from that determination, and before he filed his third PCRA petition. Judge Heffley recommended that Daniels's petition be denied. (ECF No. 23.)

## II

Daniels raises five broad objections to Judge Heffley's R&R, arguing that: (1) his Sixth Amendment right to confront witnesses against him was violated when Murchison refused to testify on cross-examination (Pet'r Obj., ECF No. 30 at 2-5); (2) the trial court erred in admitting the probation officer's testimony identifying him (*id.* at 5-7); (3) his trial counsel was ineffective for nine different reasons (*id.* at 7-14); (4) he is entitled to a new trial based on newly discovered evidence (*id.* at 14-17); and (5) his appellate counsel was ineffective. (*Id.* at 17-18.) Daniels further breaks his objections into multiple sub-arguments. The Court reviews *de novo* the specific portions of the R&R to which he objects.[2] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

---

[2]     "[F]or the portion of the R&R to which no objection [is] made, the Court reviews the R&R for clear error." *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016).

72(b)(3). The Court "may accept, reject, or modify" Judge Heffley's conclusions "in whole or in part." 28 U.S.C. § 636(b)(1)(c).

Courts give "a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (quoting *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (citation omitted)). Pursuant to 28 U.S.C. § 2254, a petition for writ of habeas corpus may be granted only if (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In order to determine whether a state court's application of federal law is "'unreasonable,'" the Court must apply an objective standard, such that the relevant application "may be incorrect but still not unreasonable." *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (quoting *Williams* 529 U.S. at 409-10). The test is whether the state court decision "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."

---

Since the Court liberally construes Daniels's objections and applies them to the R&R in its entirety, the Court reviews all of the R&R's findings and recommendations *de novo*.

*Matteo v. Superintendent. SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) (en banc).

"'Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.'" *Dellavecchia v. Sec'y Pa. Dep't of Corrs.*, 819 F.3d 682, 692 (3d Cir. 2016) (alteration in original) (quoting *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000)). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411). Rather, § 2254(d)(2) requires "substantial deference" to the state trial court. *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 2277 (2015). If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-342 (2006) (alteration in original)). However, "'[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review,'" and "'does not by definition preclude relief.'" *Brumfield*, 135 S. Ct. 2269 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

III

A

Daniels argues he is entitled to *habeas* relief because he was deprived of his right to confront Murchison when Murchison refused to answer questions on cross-examination and the trial court declined to declare a mistrial. (Pet'r Mem., ECF No. 1, at 3-10.) Judge Heffley found the trial court did not make a decision contrary to or involving an unreasonable application of clearly established federal law where it struck

Murchison's testimony and issued a curative instruction telling the jury to disregard everything Murchison said. (R&R at 14.) Daniels objects and contends that the trial court's action was not enough to remedy the violation of his Sixth Amendment right to confrontation. (Pet'r Obj., ECF 30, at 2.) He complains that Murchison's testimony, delivered on a Friday, implicated him and the curative instruction, not delivered until Monday, was "brief" and "simple" and not sufficient "to dispel the impact" of the testimony. (*Id.* at 3-4.)

> Delivering the curative instruction to jurors, the trial court explained:
>
> [Y]ou observed on Friday the fact that [Murchison] did not answer questions, the majority of the questions. He had some difficulty with the Commonwealth's questions and he did not answer a majority of [Epps's] attorney's questions and as such, he did not sit for cross-examination, so I am striking his testimony.
>
> Now, what that means is you have to strike him from your memory bank as if this witness didn't testify. The fact that he testified to giving a statement, you strike that out. The fact that he testified to certain portions of that statement or the majority of the statement or the whole statement, you strike it out. You are not to consider that when you go back to deliberate.
>
> You are not to consider his demeanor. You are not to consider anything about him. The witness' testimony has been stricken and I can't emphasize that enough. It is something that under the law, someone has to sit for cross-examination and I have made the determination this witness will not sit for cross-examination and as such, the testimony, it is as if it never happened. Just put it right out of your minds and we will move on from there.

(Nov. 21, 2013 Trial Tr. at 25-26.)

Daniels faults the trial court for letting the jurors "contemplate, or ponder, Murchison's testimony all weekend." (Pet'r Reply, ECF No. 22, at 5.) The timing of the trial court's curative instruction, while not ideal, was not unreasonable given that Murchison testified on Friday afternoon and his resistance to answering questions

could not have been known prior to his cross-examination.  The court required time to entertain argument about Defendants' motion for a mistrial before determining that a curative instruction was sufficient.

Daniels argues *Bruton v. United States*, 391 U.S. 123, 135 (1968), required a mistrial when Murchison became uncooperative, but it does not apply here.  As the Superior Court explained in its opinion on direct appeal,[3] "*Bruton* involved the admission of a co-defendant's confession that also implicated the non-testifying defendant," here "Murchison was not a co-defendant at trial," as he had already pled guilty.[4]  (Super. Ct. Op. at 11.)  And here, unlike in *Bruton*, Murchison's testimony was not admitted for any purpose against anyone, it was stricken.  The jurors were instructed not to consider it for any reason.  The state court's decision was not an unreasonable application of United States Supreme Court precedent.

Further, "to be addressable on a writ of habeas corpus, the 'inferences from a witness' refusal to answer [must have] added *critical weight* to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.'" *Todaro v. Fulcomer*, 944 F.2d 1079, 1084-85 (3d Cir. 1991) (emphasis added) (quoting *Douglas v. Alabama*, 380 U.S. 415, 420 (1965) (further citations omitted)).  Murchison's stricken testimony was not the only evidence against Daniels at trial and did not add critical weight to the case against him.  Other independent evidence of Daniels's

---

[3]     The trial court also considered argument regarding whether *Bruton* required a mistrial, ultimately deciding that it was not applicable before giving the curative instruction to jurors. (November 21, 2013 Trial Tr. at 3-23.)

[4]     Daniels acknowledges this in his habeas petition.  (*See* Pet'r Mem., at 5 ("Murchison was not tried along with Daniels, but pled guilty the week before trial.").)

involvement included Langdon Scott's testimony that Daniels and Murchison were with him during the initial, aborted trip into the apartment building and that Daniels remained in Epps's van when Scott left the area before the murders.  (Nov. 15, 2011 Trial Tr. at 11-22, 29; Nov. 16, 2011 Trial Tr. at 55, 83.)  Scott also identified Daniels on video surveillance footage from the apartment building on the day of the crime.  (*Id.* at 33-35.)  In addition, Daniels's probation officer identified him in the surveillance video captured from the crime scene.  (Nov. 17, 2013 Trial Tr. at 39-43.)  Under the circumstances, it was not unreasonable for the trial court to find that it was appropriate to strike Murchison's testimony in lieu of granting a mistrial.  "Prejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury."  *McGlory*, 968 F.2d at 344 (citation omitted).

Daniels has not shown that the stricken testimony had "a substantial and injurious effect or influence in determining the jury's verdict . . . " and has not demonstrated that the circumstances surrounding Murchison's stricken testimony support a grant of *habeas* relief pursuant to 28 U.S.C. § 2254.  *Davis v. Ayala*, 576 U.S. 257, 135 S. Ct. 2187, 2198 (2015).

B

Daniels claims "the trial court erred in admitting the lay opinion testimony of a probation officer to identify [him], in violation of the due process clause."  (Pet'r Mem. at 32; see also *id.* at 10-15.)  It allowed the prosecution to call Campbell as a witness and she testified she was a federal probation and parole officer assigned to supervise Daniels from February until July 2009.  (Nov. 17, 2013 Trial Tr. at 37-38.)  She then

identified Daniels as one of three men who were present in surveillance video and still photos captured from the hallway of the crime scene.  (*Id.* at 39-43.)

Judge Heffley concluded Daniels's claim about his probation officer's identification testimony was:  (1) non-cognizable to the extent he claimed state court error in the admission of evidence; (2) procedurally defaulted because it was not raised as a federal due process violation in state court; and (3) even if it were cognizable and not procedurally defaulted, meritless.  (R&R at 14-18.)

Daniels objects to the R&R, arguing that:  (1) his federal due process claim was not procedurally defaulted because in state court he relied on a case premised on the federal constitutional standards set forth in *Stovall v. Denno*, 388 U.S. 293 (1967) (Pet'r Obj. at 5-6); (2) the claim he raised in state court was a federal due process claim because Pennsylvania Rule of Evidence 701 is "so interwoven with federal law that it cannot be said to be independent of the merits of" such a claim (*id.* at 6-7); and (3) the R&R erroneously failed to consider the merits of his arguments under *Stovall*, *Manson v. Braithwaite*, 432 U.S. 98 (1977) and *Simmons v. United States*, 390 U.S. 377 (1968).  (*Id.* at 7.)

To "fairly present" a claim in state court, a habeas petitioner must "present a federal claim's factual *and legal* substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001) (emphasis added, citation omitted).  It is not enough that the facts required to support the federal claim were available to the state courts.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  On appeal from his judgment of sentence, Daniels asserted unsuccessfully that the trial court

erred as a matter of law and abused its discretion when it erroneously permitted a Federal Probation Officer to identify defendant as the person depicted in a surveillance video of the murder (and still photographs from said video) *in violation of Pennsylvania Rule of Evidence 701* as the Officer's lay opinion was not 'helpful' and invaded the province of the jury.

(Matters Complained of on Direct Appeal at 1-2; *see also* Trial Ct. Op. at 11 (emphasis added).)  In his appeal to the Superior Court, Daniels argued that "'[t]he Trial Court erred in admitting a probation officer's lay opinion testimony that [he] was the person depicted in the surveillance camera video recording of the crime.'"  (Super. Ct. Op. at 7 (quoting Br. for Appellant, *14, *Commonwealth v. Daniels*, No. 188 EDA 2012, 2013 WL 3859240 (Pa. Super. Ct. Apr. 15, 2013).)  Rejecting Daniels's argument, the Superior Court held that "the trial court did not err in permitting" the probation officer's identification testimony because it "was admissible to aid the jury in deciding a material fact in issue."  (Super. Ct. Op. at 13.)

There is no doubt that Daniels challenged the admission of his probation officer's testimony in state court.  But the arguments Daniels made in state court bear little resemblance to those he now asserts.  Despite his insistence that his state court pleadings relied on Supreme Court precedent, a review of the brief he filed with the Superior Court reveals the opposite.  The argument presented there was exclusively based on state evidentiary rules relating to the admissibility of lay opinion testimony.  Daniels's brief contained no reference to any of the Supreme Court cases that he cites on habeas review, nor any discussion of the reliability of identification evidence.

Daniels objects to this conclusion, pointing to his citation in his Superior Court brief to *Commonwealth v. Austin,* 657 N.E.2d 458 (Mass. 1995).  He argues that *Austin* "was explicitly based on the Supreme Court decision in *Stovall . . . .*" and implies he

raised a federal due process claim by relying on the Massachusetts decision.  (Pet'r Mem. at 10-15; see also Pet'r Obj. at 7.)  Daniels is wrong.  He cited *Austin* exclusively for its discussion of the improper admission of lay testimony under state rules of evidence.  *Austin* did mention *Stovall* in its discussion of a different claim, but that is certainly not a fair presentation of the entirely separate *Stovall* analysis.

As Judge Heffley properly recognized, a habeas court may only review the challenge actually raised in state court.  Focusing first on the claim Daniels clearly raised in state court – the legal challenge under Pennsylvania Rule of Evidence 701 – the Court agrees it is not cognizable here.  Daniels may not raise claims alleging state court error in the admission of evidence in the habeas context.  *See Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001.)  "A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation."  *Id.* Thus, the Court cannot decide whether it was appropriate for the trial court to admit Daniels's probation officer's identification testimony under Pennsylvania Rule of Evidence 701.

Daniels argues the claim he presents in his habeas petition is "so interwoven with federal law that it cannot be said to be independent of the merits of a petitioner's federal claims."  (Pet'r Obj. at 6-7.)  However, the rule he cites is inapplicable.  When a state court denies a claim based on a rule of procedure, such a ruling only bars review of the merits of a federal claim if the state's procedural rule is independent and adequate of the merits of the underlying federal rule.  *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011).  That is not what happened to Daniels.  The Pennsylvania Superior Court reviewed the claim he presented and rejected it on a substantive basis.  The

question is whether Daniels put the state courts on notice that he was asserting a federal due process claim instead of a claim that the trial court violated Pennsylvania Rule of Evidence 701.  He cannot transform his prior challenges to the state evidentiary rulings into a due process claim that avoids procedural default by mentioning the Due Process Clause in his habeas petition.  *See e.g.*, *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997) ("[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause.")  "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995).  Daniels's failure to reference his right to a "fair trial," the Due Process Clause or any cases relying on these standards in his state court proceedings forecloses his argument.[5]  (*See* Br. for Appellant, *15-23, *Commonwealth of Pennsylvania v. Daniels,* 2013 WL 3859240.)

In giving Daniels every benefit of the doubt, Judge Heffley also reviewed his challenge under Pennsylvania Rule 701, assuming for the sake of argument that he had raised it as a federal due process claim.  Even if he had, Daniels still has not shown that the state court's determination to permit the probation officer's identification testimony "by itself so infected the entire trial that the resulting conviction violates due

---

[5]      His unexhausted claim is also procedurally defaulted since the time to seek further review in state court has expired.  Daniels has not shown that any procedural default should be excused.  Federal courts may not consider procedurally defaulted claims unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In his reply brief, Daniels argues that there is cause for his default because his appellate counsel's performance was deficient.  (Pet'r Reply, ECF No. 22, at 10-11.)  However, "[t]o show cause, a petitioner must demonstrate some objective factor *external to the defense* that prevented compliance with the state's procedural requirements." *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001) (emphasis added).  Daniels has not done this.

process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Bianca v. Attorney Gen. of New Jersey*, 623 F.2d 307, 312 (3d Cir. 1980) ("[E]videntiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial."). Campbell was not the only witness who identified Daniels; Scott also identified him during the trial. In addition, members of the jury were capable of drawing their own conclusions from the surveillance video from the apartment building which "they were shown . . . several times," as Daniels himself concedes. (Pet'r Mem. at 13.) Ultimately, Daniels has not shown that the admission of his probation officer's identification testimony was "of such magnitude as to undermine the fundamental fairness of the entire trial" such that habeas relief would be warranted based on Daniels's due process argument.

Finally, Daniels argues that Judge Heffley's review of the merits of his claim improperly failed to consider his arguments under *Stovall*, *Manson*, and *Simmons*. (*Id.* at 7.) The Court disagrees. The claim Daniels brought in state court was exclusively a challenge to the admissibility of lay opinion testimony under the Pennsylvania Rules of Evidence. Judge Heffley chose to address the merits of his claim in the alternative, but she restricted her review to a constitutional challenge relating to the admissibility of lay opinion testimony, as opposed to considering Daniels's argument that the testimony was inadmissible unreliable identification testimony. In state court, Daniels did not challenge the probation officer's testimony as unreliable; he challenged it as improper opinion testimony. Those are two completely distinct legal theories. Judge Heffley was under no obligation to review the reliability argument in the alternative.

C

Daniels also asserts nine ineffective assistance of trial counsel claims.[6]  He argues his trial attorneys were ineffective for not objecting or moving for a mistrial in response to the admission of certain testimony, evidence and statements made during opening and closing arguments.  (Pet'r Mem. at 15-38.)  Judge Heffley concluded that each of Daniels' ineffective assistance claims is meritless.  (R&R at 19-29, 35-37.)  Daniels objects to all of her findings.  (Pet'r Obj. at 7-14.)

To establish an ineffective assistance of counsel claim, Daniels must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different."  *Id.* at 687-88, 694.  Counsel cannot be found to be ineffective for failing to pursue a meritless claim.  *See United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689 (explaining that courts should not second-guess counsel's assistance and engage in "hindsight, to reconstruct the circumstances of counsel's challenged conduct").

1

Daniels argues his ineffective assistance of counsel claim was not adjudicated on

---

[6]     In his memorandum of law, Daniels merged his first two claims into one claim.

the merits during his PCRA proceedings.  (Pet'r Mem. at 34.)  In his objections, he

contends that the R&R incorrectly concluded that the state courts adjudicated his

ineffective assistance of counsel claims on the merits because his PCRA counsel did not

provide a legal basis or factual support for those claims in his PCRA petition.  (Pet'r

Obj. at 7-8.)

On review, the Superior Court acknowledged inadequacies in the ineffectiveness

claims in Daniels's PCRA petition, but "reviewed each of his claims carefully to

determine whether any merit relief" and "found none that call the PCRA court's holding

into question." *See* PCRA Super. Ct. Op. at 9 n.6.  From this statement, Judge Heffley

concluded the Superior Court reviewed the claims on the merits in the alternative.

Daniels objects to this conclusion, arguing that the state court did not have the benefit

of his detailed pleading on each issue.  Any distinction is without a difference; Judge

Heffley's rejection of Daniels's ineffectiveness claims was not dependent on Section

2254's deferential standard of review.  Since the Court concludes that these claims are

meritless even if reviewed under a *de novo* standard, it need not consider this objection.

2

Daniels contends his trial counsel should have requested a cautionary

instruction during Scott's trial testimony to dispel any inference that Daniels was

responsible for Scott having been stabbed in prison after his preliminary hearing

testimony.  (Pet'r Mem. at 15-17.)  He argues the prosecutor's questions, which raised

prior physical altercations between them, impermissibly implied that Daniels was

motivated to stab Scott.  (*Id.*)

Counsel for other defendants objected to this line of questioning and Daniels's

counsel later asserted that Scott's testimony was not admissible to show that Daniels had a motive to attack him.  (Nov. 16, 2011 Trial Tr. at 97 ("At the time [Scott] is attacked . . . , he has not entered into a plea agreement, there is no suggestion that he would cooperate or testify . . . .  [T]he Commonwealth is trying to show motive for this attack and therefore, it has some indicia of guilt.  That is inaccurate.")  The trial court allowed the testimony, but with a cautionary instruction.  (*Id.* at 101.)  After closing arguments and before jury deliberations began, the court told the jurors:

> Ladies and gentlemen, just one point I want to make.  There was some testimony about the one witness, Langdon Scott, being stabbed at the time he was held in custody.  There was no evidence presented that any of these three Defendants had any involvement at all in that stabbing and you must not draw an inference from the argument that they did.

(Nov. 29, 2011 Trial Tr. at 181.)

Considering these facts, Judge Heffley held that "[t]rial counsel cannot be ineffective for failing to request an instruction . . . that was eventually given."  (R&R at 20-21.)  Daniels feels that the cautionary instruction was insufficient because it was not given until thirteen days after Scott's testimony and because it "was given after closing arguments, during which the prosecutor again raised the inference that Scott was stabbed because of Daniels, or another codefendant . . . ."  (Pet'r Mem. at 8-9.)

To prevail on this claim, Daniels must show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  Daniels has not met this burden:  his counsel argued against the introduction of this portion of Scott's testimony and, although the testimony was permitted, the court ultimately delivered a limiting instruction requiring jurors not to

consider it as evidence of Daniels's involvement in Scott's stabbing.  His counsel's performance was objectively reasonable.  Even if it was not, Daniels has not shown that but for any errors, the result of the proceeding would have been different considering the totality of the evidence presented to the jury – evidence which included video surveillance footage from the scene of the crime.

3

Daniels claims his trial counsel was ineffective for not objecting to Murchison's assertions that he did not want to testify because his family had been threatened. (Pet'r Mem. at 17-19.)  The R&R found this claim relied on inaccurate facts and was not a ground for habeas relief.  (R&R at 21.)  Daniels states that the R&R "assumed the jury followed the trial court's instructions" striking Murchison's testimony, and contends this assumption "is a convenient, and illogical, legal fiction."  (Pet'r. Obj. at 9.)

For the reasons set forth above, the trial court's determination to strike Murchison's testimony and issue a curative instruction was not unreasonable.  Daniels has not shown his lawyers were ineffective where the jury is presumed to follow the trial court's curative instruction.  *See Shannon v. United States*, 512 U.S. 573, 584-85 (1994); *see also Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting "the almost invariable assumption of the law that jurors follow their instructions").

4

Daniels argues his attorneys should have requested a mistrial after a chart – Trial Exhibit C-47 – was introduced showing unverified phone calls attributed to him. (Pet'r Mem. at 19-22.)  Judge Heffley found this argument to be meritless.  (R&R at 21-23.)  Daniels believes the Commonwealth's witness made an impermissible "'suggestion'

20

to the jury that the number may have been attributed to [him]." He asserts trial counsel should have requested a mistrial based on this misrepresentation. (Pet'r Obj. at 10.) His argument about exhibit C-47 is not sufficient to demonstrate ineffective assistance of counsel warranting habeas relief.

Daniels's lawyers prepared a motion to suppress Daniels's purported phone records and flagged the issue during the November 8, 2011 pretrial conference but did not file the motion because the prosecutor responded that no such records existed. (Nov. 8, 2011 Pretrial Conf. Tr. at 3.) When the Commonwealth sought to introduce Exhibit C-47 at trial, Daniels's counsel requested a sidebar conference where he argued: "That shows my client, a number of calls he allegedly made and there is no verification of any calls by my client or to my client. The chart says that there is." (Nov. 21, 2011 Trial Tr. at 30-31.) The prosecutor acknowledged a phone number on the poster was attributed to Daniels, but stated

> and since that poster was made, we had a discussion about it where I said we were unable to verify it was his and he is never on the phone. So I am going to actually ask Detective Dove and he will testify he was unable to verify it. . . . I am not arguing that it is attributed to Mr. Daniels.

(*Id.* at 31.) The court asked the prosecution to "[c]larify that." (*Id.*) It did during the following exchange at the close of direct examination: "On this chart, you have calls from between Mr. Epps and Edward Daniels. Now you never got verification of a number that for sure belonged to Edward Daniels, is that correct?" (Nov. 21, 2011 Trial Tr. at 70.) Dove responded, "[n]o. We did receive a number that was suggested that it was his number. We were unable to verify that was his number." (*Id.*) He was then asked if that was "why [he was not asked to] talk about Mr. Daniels in looking at the graphs in terms of conversations between Mr. Epps and Mr. Daniels," and he responded

affirmatively.  (*Id.*)

Daniels has not shown trial counsel's conduct related to the exhibit was objectively unreasonable.  To the contrary, counsel flagged for the court the poster's incorrect attribution of a phone number to Daniels which led to Dove's testimony that the police had been unable to verify the phone number as one belonging to Daniels.  In his closing argument, Daniels's lawyers showed Exhibit C-47 to the jury and reminded them that

> there is one mistake which the Commonwealth did get up and concede, which is when Detective Dove was testifying, there is no phone that has been connected to Edward Daniels.  They conceded that.  What Detective Dove said was there was a number there that we suspected or thought might be his but we were unable to confirm it.  Well, guess what, there is a reason why they were unable to confirm it because it was not his . . . If there was a phone that called anybody on this chart, all the names that you heard that in any way was associated with Mr. Daniels, you would have heard about it.

(Nov. 28, 2011 Trial Tr. at 43-44.)  No testimony tied Daniels to the number listed on the exhibit and Daniels has not shown the verdict would have been different but for his trial counsel's conduct.

5

Daniels feels his attorneys were ineffective for failing to object to the jury being told that Campbell was a federal probation officer because revealing this information "indicated . . . Daniels was guilty of prior criminal conduct."  (Pet'r Mem. at 22-24.) Judge Heffley found this argument did not warrant habeas relief.  (R&R at 23-24.)  The Court concurs.

Before Campbell's testimony, the prosecution told the court it "didn't have a problem with her not identifying herself as a probation officer because that could be

prejudicial to the Defendant but she still has to say what period of time she knew him, how frequently she would see him." (Nov. 17, 2011 Trial Tr. at 3-4.) The court nevertheless told Campbell she would be identified as a federal probation officer. (*Id.* at 6.) The prosecution then told her no one would ask her "what [Daniels] was arrested for or convicted of, what he was on probation for" but she could testify "he was under [her] supervision. (*Id.* at 7.) Daniels's counsel did not object, deciding instead to attempt to cast doubt on the probation officer's ability to accurately identify Daniels on the video. (*Id.* at 31-32.) Counsel's strategy was not unreasonable under *Strickland*. And Daniels has not shown there is a reasonable probability that the outcome of his trial would have been different if Campbell had not been identified as a probation officer.

6

Daniels claims his lawyers were ineffective for not requesting a cautionary instruction about a hypothetical question the prosecutor asked the medical examiner. (Pet'r Mem. at 24-26.) Judge Heffley found he was not entitled to habeas relief on this claim. (R&R at 25-26.)

The question was based on Murchison's previously stricken testimony that Thal may have been held in a headlock before she was shot. (Nov. 18, 2011 Trial Tr. at 43-44.) The prosecutor asked:

> When she received this gunshot wound, if you would explain to me, there was testimony that maybe she was held in a headlock when the gun was fired or maybe someone was behind her holding her by her hair because you see she has long hair or by the neck, that she is near the door, someone forced her to open the door. In those scenarios of either a headlock, grabbing her by the hair, manipulating her or by the neck, in looking at that wound and the path, could you tell or you could not tell how her body was or how the person who did the shooting was positioned when she gets

this wound?

(Nov. 23, 2011 Trial Tr. at 72-73.)  Daniels's counsel waited until jurors had been

excused for lunch and then moved for a mistrial, explaining that he did not object

during the testimony because he did not "want to draw undue attention to" the

question.  (*Id.* at 101.)  He sought a mistrial because the "only source" of information

that Thal was held in a headlock before she was shot was Murchison's statement that

had been read into the record during his direct examination.  (*Id.* at 101-02.)  The court

denied the motion, explaining "I will give a cautionary instruction though, that it is

strictly a speculative hypothetical . . . ."  (*Id.* at 102-03.)  The court, however, never gave

the cautionary instruction.  (*Id.* at 103-117).

After the court denied the motion for a mistrial, Daniels's counsel asked the

prosecution to make sure that nothing referenced in its closing argument would have

Murchison as its "single source" of evidence.  (Nov. 23, 2011 Trial Tr. at 103.)  The

prosecution complied.  (*See* Nov. 28, 2011 Trial Tr. at 35-66.)  To the extent Daniels's

counsel forgot to ask the court to give the cautionary instruction, Daniels suffered no

prejudice because the prosecution's closing did not rely on Murchison's testimony.  To

the extent that his counsel made a strategic decision to waive the cautionary

instruction, it was not objectively unreasonable where the instruction might have

reminded the jurors about the circumstances the medical examiner had been asked to

consider.  *See Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) ("[C]ounsel's

strategic choices will not be second-guessed by post-hoc determinations that a different

trial strategy would have fared better.")

7

Daniels claims his counsel was ineffective for not objecting when Scott identified him in court.  Judge Heffley concluded Daniels had not met his burden under *Strickland* because it was "clear that counsel's strategy to undermine Scott's credibility, rather than merely to attempt to suppress the statement, was a reasonable strategic decision" and Daniels did not "demonstrate that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ."  (R&R at 27.)  Daniels believes "cross-examination is not a substitute for suppressing inadmissible evidence."  (Pet'r Obj. at 12.)

Daniels claims that Scott only learned his identity when the two of them were both present during a September 23, 2009 preliminary hearing.  (Pet'r Br. at 26.)  He contends that Scott did not identify him until after the preliminary hearing and seeing "each other regularly while in the county prison for two years."  (*Id.*)  He asserts that when Scott testified at the preliminary hearing, "he did not know Daniels's name and could only describe him as 'short, bald-headed guy, kind of chubby."  (*Id.*)  Because Scott had not previously identified him, Daniels argues the in-court identification had no independent basis and was made under highly suggestive circumstances that should have barred its admission.  (*Id.* at 27-28.)

Instead of moving to suppress Scott's identification, trial counsel cross-examined him about his testimony at the pretrial hearing.  He explained that Scott had been asked "What does he look like" and answered "I can't tell you what he looked like.  He was short, bald-headed guy, kind of chubby."  (Nov. 15, 2011 Trial Tr. at 264.)  Scott confirmed that when asked who the person was, he did not say Edward Daniels and

that when he had been asked to describe someone who was part of a robbery, Scott could only say that "he was short and bald-headed." (*Id.* at 264-65.) Daniels has not shown that his counsel made an unreasonable strategic decision when he asked questions that might cast doubt on Scott's ability to identify him instead of moving to suppress the identification. Even if this choice was unreasonable, Daniels has not shown that there is a reasonable probability that, but for the error, the result of the trial would have been different. There was video surveillance footage from the scene of the crime and even without Scott's identification testimony, jurors would have seen the video and had an opportunity to consider whether Daniels was depicted in it.

8

Daniels also seeks habeas relief based on his counsel's failure to object to what he claims were instances of prosecutorial misconduct during opening statements and closing arguments. (Pet'r Mem. at 30-38.) Judge Heffley found these claims also lacked merit. (R&R at 27-29.)

Daniels argues counsel should have objected to the following statement from the prosecutor's opening, made after she explained that Murchison, Scott and a third co-defendant had pled guilty for their roles:

> You may be wondering why these three are here. Well no matter how much evidence we have, we can't force people to plead guilty. Everyone has a right to a trial by a jury of his peers and that's what these three are getting. They are getting a trial by you. . . .
>
> Now, I don't know what the Defense is going to say, but when there is a mountain of evidence, they will try to distract you away from it because if you look at it, you will very quickly convict every single one of these Defendants. As the Judge already told you, lawyer's questions are not evidence. Lawyer's antics are not evidence. Sideshow distractions and theories without support are not evidence.

26

(Nov. 14, 2011 Trial Tr. at 23.)  Daniels contends the prosecutor's statement improperly expressed an opinion about his guilt and disparaged his counsel.  (Pet'r Mem. at 30-31.) But the prosecutor told the jury that any attorney's statements could not be considered evidence.  And her opening statement was reasonably within the latitude afforded to counsel when presenting a case.  The state and federal tests for prosecutorial misconduct claims are "substantively identical; both focus on the fundamental fairness of the trial based on potential prejudice from the alleged prosecutorial misconduct." *Walker v. Palahovich*, No. 05-609, 2007 WL 666763, at *5-6 (E.D. Pa. Feb. 6, 2007).  "[A] prosecutor is 'free to present his or her arguments with logical force and vigor' and some 'oratorical flair' woven into a fact-based description does not give rise to a finding of misconduct." *Sneed v. Beard*, 328 F. Supp. 3d 412, 439 (E.D. Pa. 2018) (quoting *Commonwealth v. Sneed*, 45 A.3d 1096, 1113 (Pa. 2012)).  In the context of the prosecutor's opening, these statements were not sufficient to deprive Daniels of a fundamentally fair trial and his lawyers were not ineffective for not objecting to them.

Daniels feels his counsel should have objected to two statements in the prosecutor's closing argument.  First, the prosecutor said:

> In the kind of life that they live, they don't put anything in their name.  It is easy enough when you go to Cricket or Boost, give a crack head $20, say take out a cell phone in my name.  Cricket or Boost just want money.  You can take out ten cell phones.  All of these guys had several cell phones on them . . . .

(Nov. 29, 2011 Trial Tr. at 137.)  These comments were made while discussing the arrest and confession of co-conspirator Antonio Wright.  (*Id.* at 136-37.)  Then, the prosecutor changed subjects to discuss Daniels, saying:

> Now, let's talk about Daniels.  The bottom line is this.  We see Daniels, and when you look at the video, he is never on the phone, so there goes that cell

> phone stuff.  In the phone, we couldn't verify which was his because they
> do it in different names and when we got it, we just couldn't prove it, so we
> back off, but we see the video and show the video and he is just lurking in
> the shadows there . . . .

(*Id.* at 140.)  Daniels argues that the prosecutor's "comments imply prior criminal

activity" and that he "was deceptive enough so that he could not be verified . . . ."  (Pet'r

Mem. at 33.)  In his petition, Daniels fails to state that the prosecutor made the initial

comments about cell phones while discussing Wright.  When the prosecutor switched to

Daniels, he confirmed the prosecution had been unable to verify a phone number

belonging to Daniels and had been unable to confirm that any co-conspirators had

spoken on the phone with him.  The prosecutor did not, as Daniels argues, claim that a

particular phone number could be attributed to Daniels.  (Pet'r Obj. at 30.)  Daniels has

not shown that the prosecutor's statements about cell phones so infected the trial with

unfairness that he was denied due process and his counsel cannot be deemed ineffective

for failing to object to them.

9

Daniels argues that Judge Heffley's findings regarding his claims of ineffective

trial counsel are contrary to the principle of party presentation.  Daniels contends that

for each of his claims, "arguments were made in the R&R in response to Daniels's

claims for relief that the Commonwealth failed to make" and that the arguments he

made in support of his claims "were not squarely addressed."  (Pet'r Obj. at 14.)

The "principle of party presentation" is that "parties frame the issues for decision

and the courts generally serve as neutral arbiters of matters the parties present."

*Greenlaw v. United States*, 554 U.S. 237, 243 (2008).  The Court has reviewed each of

Daniels's ineffective assistance of counsel claims *de novo* and finds that the R&R's

consideration of his claims does not violate this principle.  Even if it did, there is no

basis for remanding Daniels's case for an evidentiary hearing on the claims.  He has not

met his burden to show trial counsel was ineffective.

D

Daniels also argues his appellate counsel was ineffective for failing to raise a

claim on direct appeal of trial court error pertaining to comments the prosecutor made

about Scott's stabbing during closing arguments.  (Pet'r Mem. at 41-43.)  Judge Heffley

concluded that this claim was procedurally defaulted and also meritless.  (R&R at 35-

37.)  Daniels claims that appellate counsel's ineffectiveness was enough to establish

"cause and prejudice" for any default.  (Pet'r Obj. at 18.)  He also contends that his

claim is not meritless.  (*Id.*)  This claim is procedurally defaulted and Daniels has not

established cause and prejudice or a miscarriage of justice.  As a result, Daniels's

challenges to Judge Heffley's discussion of the merits of his claim cannot provide a

basis for habeas relief.  "It has long been the rule that attorney error is an objective

external factor providing cause for excusing a procedural default only if that error

amounted to a deprivation of the constitutional right to counsel."  *Davila v. Davis*, 137

S. Ct. 2058, 2065 (2017).  It is unclear whether Daniels's argument is that:  (1) the trial

court's decision not to grant a mistrial was in error and appellate counsel's

ineffectiveness is the "cause" that must excuse his default, or (2) appellate counsel was

ineffective for failing to argue that the trial court's decision was in error and PCRA

counsel's ineffectiveness is the "cause" that must excuse his default.[7]  Either way, the

---

[7]    If Daniels is arguing appellate counsel's ineffectiveness was the cause for his failure to bring
the claim of appellate counsel ineffectiveness, his argument necessarily fails.  While appellate
counsel's errors might have caused him to fail to raise a claim of trial court error, appellate counsel

result is the same.

Neither of these claims were raised at any time during state proceedings and both are procedurally defaulted, which Daniels concedes. To the extent Daniels is arguing that appellate counsel's ineffectiveness is the "cause" that excuses the default, his argument is foreclosed. Daniels had an opportunity to challenge appellate counsel's ineffectiveness during PCRA proceedings. This allegation of cause is itself procedurally defaulted and thus unavailable. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). To the extent Daniels is arguing his defaulted claim of appellate counsel ineffectiveness should be reviewed because PCRA counsel's ineffectiveness "caused" the default, his argument also fails. The Supreme Court has concluded allegations of PCRA counsel ineffectiveness cannot provide a basis to excuse the default of a claim of ineffective assistance of appellate counsel. *Davila*, 137 S. Ct. at 2065.

E

Daniels argues that he is entitled to a new trial because of newly discovered evidence, unavailable at the time of trial, about the conduct of Detectives Ronald Dove, Ohmarr Jenkins and James Pitts. (Pet'r Mem. at 38-41.) Judge Heffley found that such claims did not warrant habeas relief and the Court agrees.

1

Daniels says he received copies of newspaper articles about Detectives Pitts[8] and

---

would not have been raising a claim of his own ineffectiveness and cannot be said to have caused the default of such a claim.

[8]     In his objections, Daniels asserts that he "was interviewed by the Internal Affairs Unit" of the Philadelphia Police Department, apparently in conjunction with their investigation of misconduct by Detective Pitts "and was told he would need an attorney to obtain the evidence against Detective Pitts." (Pet'r Obj. at 17.) Two motions he filed seeking appointment of counsel so he could obtain evidence against Pitts were denied. (*Id.*; see also ECF Nos. 19 and 21.) Daniels asks the Court to set aside these denials, appoint counsel and allow him additional time to obtain

Jenkins suggesting they were jointly involved in other murder cases where witnesses or suspects were coerced to make statements. (Pet'r Mem. at 38.)  He argues all the evidence about Pitts and Jenkins was discovered after he was tried, convicted and sentenced and "no evidence" was "presented at trial to undermine" their credibility.  *Id.* at 40.  He seeks an investigation and an evidentiary hearing to allow for a determination of "how much of the information provided in" witness statements they obtained in this case was "a result of coercion and intimidation by Pitts and Jenkins." (*Id.* at 40.)

Daniels first raised an argument about the Pitts/Jenkins newspaper stories in his second PCRA petition.  (*See* Second PCRA Trial Ct. Op. at 3-4.)  The PCRA court held that this petition was untimely as it was filed on June 2, 2017, well after the PCRA's one-year statutory deadline had expired.  (Second PCRA Trial Ct. Op. at 6.  The PCRA court declined to excuse Daniels's untimeliness because the accusations against Pitts and Jenkins "came to light in September of 2016 . . . well prior to the date" of his second PCRA petition.  (*Id.* at 6-7.)  When he filed his second PCRA petition, the PCRA required petitions invoking an exception to the Act's one-year filing limitation based on new facts to be filed *within 60 days* of the date the new facts became available.  42 Pa. Cons. Stat. § 9545(b)(2).  The statute was later amended to allow petitioners to file a petition within one year of the date the claim could have been presented, but the amendment applies only to claims arising no more than one year before October 24, 2018 – meaning only claims that arose one year or less before December 24, 2018 are

---

evidence.  (*Id.*)  Daniels's request is effectively an untimely motion for reconsideration of the decisions on his motions for appointment of counsel.

entitled to retroactive application of the extended deadline.  Section 3 of Act of October 24, 2018, Pub. L. 894 No. 146, § 2 (amending 42 Pa. Cons. Stat. § 9545).  Daniels is not entitled to the extended deadline for the Pitts/Jenkins claim even assuming that it first arose when he filed his second PCRA petition on June 2, 2017.  The Superior Court affirmed the PCRA court's determination that Daniels's second PCRA petition was untimely as to his claims about Pitts and Jenkins.  Second PCRA Super. Ct. Op., 2018 WL 3469857, at *6-7.

Judge Heffley concluded that the PCRA and Superior Court's untimeliness determinations for Daniels's "new evidence" claims about Pitts and Jenkins were "not contrary to, nor an unreasonable application of United States Supreme Court precedent" requiring habeas relief.  (R&R at 31.)  Daniels contends that the R&R "conveniently ignored the fact that this aspect of the claim is still before the state courts" and fails to acknowledge that this claim was not adjudicated on its merits.  (Pet'r Obj. at 15.)  He argues that "[i]f the Superior Court holds that this claim is timely, this claim would not be procedurally defaulted" and asks the Court to "stay the proceeding until the conclusion of the State court proceedings" related to his third PCRA petition.  (*Id.*)

The "stay and abey" procedure was not "intended to create a 'back door' to the review of claims that were untimely at the time of their original filing date." *Sistrunk v. Rozum*, No. 06-5630, 2009 WL 1089557, at *9 (E.D. Pa. Apr. 21, 2009).  "[T]he district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  Daniels has not sufficiently shown how any evidence of Pitts's or Jenkins's misconduct in other

cases raises a potentially meritorious claim in this case. And the PCRA court has already dismissed Daniels's third PCRA petition for untimeliness. *Commonwealth v. Daniels*, No. CP-51-CR-0012194-2009, Dkt. at 18 (Oct. 16, 2018). Daniels's argument that it is *possible* that his claims about Pitts and Jenkins – the same claims he previously presented – *might* be found timely via his appeal to the Superior Court on his third PCRA petition is not enough to require the Court to grant either a "stay and abey" or habeas relief. *See, e.g. Joseph v. Garman*, No. 18-2202, 2018 WL 5078807, at *3 (E.D. Pa. Oct. 18, 2018) (declining to stay and abey where a petitioner "had definitely not demonstrated that his claim relating to [new evidence was] potentially meritorious or how his success in obtaining [new] evidence would help his claims raised in this petition"); *Steinman v. Kerestes*, No. 10-2398, 2010 WL 4910178, at *3 (E.D. Pa. Dec. 1, 2010) (declining to grant relief where the petitioner presented "the question of the potential merit of his 'likely' or 'possible' – but presently unexhausted – claim").

2

Daniels cites purportedly new evidence that Detective Dove "pled guilty to several charges related to assistance he provided to help someone flee fr[om] arrest after they committed a murder" on April 26, 2017. (Pet'r Mem. at 39.) He argues that new evidence about Dove calls "his credibility and the integrity of the part of the investigation he conducted" into question. (*Id.*) In this case, Dove testified about his analysis of phone records. (*Id.*)

The PCRA Court rejected this claim, finding that the newspaper articles Daniels attached to his petition to illustrate the purported new evidence showed that Dove had first been accused of improprieties in 2013. Second PCRA Trial Ct. Op. at 6-7. It

concluded that his petition was untimely because it was submitted well beyond 60 days after Daniels could have first raised his claim about Dove.  (*Id.*)  On appeal, the Superior Court held that Daniels's claim about Dove relied on Dove's guilty pleas for helping his girlfriend flee from arrest.  Second PCRA Super. Ct. Op., 2018 WL 3469857, at *6.  Dove entered the pleas on April 26, 2017, just 37 days before Daniels's filed his second PCRA petition.  Thus, the Superior Court concluded that the untimeliness of Daniels's claims about Dove's arrest was excused under 42 Pa. Cons. Stat. § 9545(b)(1)(ii) because he "filed his PCRA petition within sixty days of when his claim could have been presented."  (*Id.*)  Nevertheless, the Superior Court concluded that this claim lacked merit because "it would not likely compel a different verdict" as Dove's role in the investigation was "limited to analyzing phone records."  (*Id.* at *7.)  In this limited role, Dove's testimony did not implicate Daniels because, as the Court has already explained, Dove ultimately testified he was unable to verify a phone number belonging to Daniels.  (*Id.*)

Daniels has not shown that the state court's adjudication of his claim regarding the implications of Dove's guilty plea either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Dove's only testimony was that he had not been able to identify a phone number as belonging to Daniels.  Dove's misconduct in a different case related to Dove's girlfriend does not make it "more likely than not that no reasonable juror would have found [Daniels]

guilty beyond a reasonable doubt" in this case.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

F

Finally, the Court considers Daniels's motion to expand the record.  (ECF No. 32.)  Daniels seeks to obtain additional evidence about Detective Pitts to include with his habeas petition.  Daniels argues that through other investigations "there is a substantial amount of evidence being disclosed that demonstrates that Detective Pitts has engaged in a long pattern of abuse and coercion to obtain statements from witnesses and suspects."  (*Id.* at 1.)  He contends that he "has not had a full and fair opportunity to develop the factual basis of his claim of newly-discovered evidence" and that some statements from the witnesses Pitts interviewed in this case "follow the pattern of misconduct by Detective Pitts."  (*Id.*)  Pitts interviewed Daniels and other witnesses in this case including Wright, Murchison and Scott.  (*Id.*)  In support of his motion, Daniels attaches documents including a Superior Court opinion from a different case, *Commonwealth v. Dwayne Thorpe*, CP-51-CR-0011433-2008, which affirmed the PCRA court's decision to vacate Thorpe's conviction and order a new trial based upon Pitts's pattern of behavior in that case.

Rules 6 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts provide guidance for discovery issues in habeas proceedings.  Rule 7 states that a federal habeas judge may "direct the parties to expand the record by submitting additional materials relating to the petition."  *See* Rule 7(a), 28 U.S.C. foll. § 2254.  "The burden rests upon the [movant] to demonstrate that the sought-after information is pertinent and that there is good cause for its production."  *Williams v.*

35

*Beard*, 637 F.3d 195, 209 (3d Cir. 2011); *see also Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994) (petitioner establishes "good cause" by "point[ing] to specific evidence that might be discovered that would support a constitutional claim").

Daniels has not met his burden.  First, he has been on notice of Pitts's alleged misconduct since at least September of 2016.  (Second PCRA Trial Ct. Op. at 6.)  The Superior Court already found that any claims regarding Pitts's alleged misconduct are untimely.  (*See* Second PCRA Super. Ct. Op., 2018 WL 3469857, at *6-7.)  Further, even if any claims related to Pitts are not untimely, Daniels has not shown how Pitts's use of coercive tactics in another case or cases would provide pertinent new evidence sufficient to support a constitutional claim in this case.  He does not point to any witness testimony suggesting that Pitts used coercive tactics with Wright, Murchison, Scott or anyone else involved in this case.  Instead, Daniels only speculates that Pitts engaged in a pattern of witness coercion after Thal's and Gilmore's murders.  This is not the type of "specific evidence" that requires the Court to grant Daniels's motion.

IV

The Court overrules Daniels's objections, adopts the R&R and denies and dismisses Daniels's petition.  The Court also denies Daniels's motion to expand the record.  An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.